UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY BRADSHAW-LOVE,

                    Petitioner,                    Case No. 2:09-cv-13053
                                                   Hon. Arthur J. Tarnow

v.

MILLICENT WARREN,

                    Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS
CORPUS, GRANTING A CERTIFICATE OF APPEALABILITY, AND
GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS**

Petitioner Nancy Bradshaw-Love filed this application for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted after a jury trial in the

Ogemaw County Circuit Court of conspiracy to commit assault with intent to do great

bodily harm, MICH. COMP. LAWS § 750.84, and attempted escape while awaiting trial

for a felony. MICH. COMP. LAWS § 750.197(2)).  The trial court imposed a controlling

sentence of 12 to 30 years' imprisonment for the assault conviction.

The Court interprets the amended petition to be raising the following claims:

(1) insufficient evidence was presented at trial to sustain Petitioner's conviction for

attempted escape, (2) Petitioner was charged with attempted escape, but the jury was

erroneously instructed on the offense of conspiracy to commit escape, (3) trial counsel

1

*Bradshaw v. Warren*, USDC #09-13053

was ineffective for failing to raise an insanity defense, (4) trial counsel was ineffective for failing to move to suppress letters written by Petitioner from jail on the grounds that they were a product of her mental illness, (5) trial counsel was ineffective for failing to present mitigating evidence at sentencing, (6) recasts the claim that trial counsel was ineffective for failure to pursue an insanity defense, (7) Petitioner's counsel had a conflict of interest, (8) trial counsel was ineffective for failing to move to change the venue of the trial, (9) another restatement of claim that trial counsel was ineffective, and (10) Petitioner's appellate counsel was ineffective for failing to raise these claims on direct appeal or properly support them.

The Court will deny the petition because the claims are without merit. The Court will, however, grant Petitioner a certificate of appealability with respect to her third and fifth claims, and grant Petitioner permission to proceed on appeal in forma pauperis.

## I. Background

The charges against Petitioner arose from allegations that she and her co-defendant, Harold Priddy, attempted to free Petitioner while she was being transported in the courthouse for a preliminary examination on different charges.

*Bradshaw v. Warren*, USDC #09-13053

The prosecution introduced evidence that Petitioner and Priddy planned the escape through letters and telephone conversations while Petitioner was in jail awaiting trial on a resisting and obstructing arrest charge. The prosecution also introduced the testimony of court personnel, specifically the officer who had custody of Petitioner, that upon entering the stairwell of the courthouse, Priddy attacked the officer by pouring gasoline on him and trying to bind his hands. The officer broke free and tried to run up the staircase, but Priddy pulled him back. The incident was then broken up by other court personnel, and Priddy was arrested while Petitioner remained in custody. Further facts surrounding the trial court proceedings will be described as necessary below.

Following her conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals.  Her appointed appellate attorney filed a brief on appeal, raising the following claims:

> I. Whether Ms. Bradshaw-Love was denied her constitutional right to the effective assistance of trial counsel where her attorney failed to pursue an insanity defense or a psychological evaluation despite Ms. Bradshaw-Love's extensive history of mental illness.
>
> II. Whether Ms. Bradshaw-Love was denied her due process right to a properly instructed jury where the trial court, as part of a long and confusing list of crimes, some applicable only to Ms. Bradshaw-Love and some applicable only to her co-defendant, neglected entirely to

*Bradshaw v. Warren*, USDC #09-13053

define the conspiracy crime for which Ms. Bradshaw-Love was convicted.

III. Whether Ms. Bradshaw-Love was denied the effective assistance of her attorney by her trial attorney's failure to object to the error in the jury instructions discussed in the previous section.

IV. Whether Ms. Bradshaw-Love was denied the effective assistance of her attorney where her trial attorney failed to move for a change of venue where the alleged crime happened in the very courthouse in which her trial occurred.

V. Whether Ms. Bradshaw-Love was denied her Sixth and Fourteenth Amendment rights where the trial court sentenced her based on facts not found by the jury beyond a reasonable doubt.

VI. Whether Ms. Bradshaw-Love was denied the effective assistance of her attorney where her trial attorney failed to object to the sentencing issue in this appeal.

VII. The trial court erred in ordering Bradshaw-Love to pay $500 in attorney fees, especially considering a failure of the trial court to determine her ability to pay.

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *People v. Priddy*, No. 276399, 2008 WL 2812118 (Mich. Ct. App. July 22, 2008). Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented

4

*Bradshaw v. Warren*, USDC #09-13053

should be reviewed by the Court. *People v. Bradshaw-Love*, 759 N.W.2d 383 (Mich. 2009) (table).

Petitioner then initiated the present action and subsequently successfully moved this Court to stay her petition and hold her case in abeyance so she could return to state court to exhaust additional claims.

Petitioner returned to the state trial court and filed a motion for relief from judgment, raising what now form her habeas claims. The trial court denied the motion for relief from judgment in an opinion dated March 7, 2012. The short order stated that it reviewed Petitioner's motion and all of the attached exhibits and found that the claims lacked meritt and had previously been rejected by the court of appeals.

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals. The Michigan Court of Appeals denied the application for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *People v. Bradshaw-Love*, No. 312315 (Mich. Ct. App. Sept. 24, 2013). Petitioner filed an application for leave to appeal that decision in the Michigan Supreme Court, but it was also denied with citation to Rule 6.508(D). *People v. Bradshaw-Love*, 846 N.W.2d 552 (Mich. 2014) (table).

*Bradshaw v. Warren*, USDC #09-13053

Petitioner then successfully moved to reopen this case, which is now ready for decision.

## II. Standard of Review

This habeas petition is reviewed under the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). Under AEDPA, a federal court cannot grant habeas relief with respect to any claim adjudicated on the merits in a state-court proceeding unless the state adjudication of the claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1), (2).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the

*Bradshaw v. Warren*, USDC #09-13053

statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86 (2011), (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87 (internal quotation omitted).

To obtain relief under § 2254(d)(2), a petitioner must show an unreasonable determination of fact and that the resulting state court decision was "based on" that unreasonable determination. *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2012).

*Bradshaw v. Warren*, USDC #09-13053

### III. Discussion

A. Procedural Default

Respondent contends that several of Petitioner's claims are procedurally defaulted because the errors were not preserved in the trial court or on direct appeal. Under the procedural default doctrine, a federal habeas court will not review a question of federal law if a state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. See *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, procedural default is not a jurisdictional bar to review of a habeas petition on the merits. See *Trest v. Cain*, 522 U.S. 87, 89 (1997). Additionally, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). It may be more economical for the habeas court to simply review the merits of the petitioner's claims, "for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In the present case, the Court deems it more efficient to proceed directly to the merits, especially

8

*Bradshaw v. Warren*, USDC #09-13053

because Petitioner alleges that her attorneys were ineffective for failing to preserve the defaulted claims.

B. Sufficiency of the Evidence

Petitioner first claims that insufficient evidence was offered at trial to support her conviction for attempted escape. Specifically, she argues that the evidence presented at trial showed that while Priddy assaulted the courtroom officer, she remained still and did not attempt to escape despite the opportunity to do so. She indicates that she communicated with Priddy before the incident that she did not want him to carry out the escape attempt.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the

9

*Bradshaw v. Warren*, USDC #09-13053

substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006), quoting *Jackson*, 443 U.S. at 324 n.16.

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205, citing *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id*.

Petitioner's challenge to the sufficiency of the evidence supporting her escape conviction is without merit. "[T]he jail escape statute requires a showing that (1) the defendant was lawfully imprisoned in a jail or other place of confinement while awaiting legal proceedings or transfer to prison and (2) the defendant broke or attempted to break the jail or place of confinement, regardless of whether an escape was actually made." *People v. Fox*, 591 N.W.2d 384, 392 (Mich. Ct. App. 1998). An

*Bradshaw v. Warren*, USDC #09-13053

attempt is "[a]n overt act that is done with the intent to commit a crime but that falls short of completing the crime." *People v. Williams*, 792 N.W.2d 384, 388 (Mich. Ct. App. 2010) (quoting Black's Law Dictionary (8th ed.)). This includes any act toward commission of the intended offense that goes beyond mere preparation. *People v. Thousand*, 631 N.W.2d 694, 701 (Mich. 2001).

In this case, viewed most favorably to the prosecution as dictated by the *Jackson* standard, sufficient evidence was presented at trial to show beyond a reasonable doubt that Petitioner committed an overt act constituting an attempt to escape. Setting aside the acts or preparation, which included sending letters and instructions to Priddy on when and how to carry out the escape plan, the evidence showed that Petitioner committed overt acts during the incident itself.

Deputy Sheltrown testified that he on the date of the incident he was escorting Petitioner in the stairwell when he noticed Priddy standing off to the side. Petitioner's hands were cuffed in front, allowing her to give Priddy a "thumbs-up" or "thumbs-down" signal, though Sheltrown did not see any signal. As they passed, Priddy splashed gasoline from a water bottle on Sheltrown's face. A struggle between Sheltrown and Priddy then ensued. In the meantime, Petitioner slipped into the hallway. Dkt. 9-4, at 189-200.

11

*Bradshaw v. Warren*, USDC #09-13053

Ogemaw County Clerk Gary Klacking heard a commotion and went into the hall. Id., at 235. He looked toward the stairwell and saw Petitioner standing in the hall by herself. He approached her and asked if anyone was in the stairwell, and Peitioner replied "I don't know," or, "I don't think so." Id., at 236-37.

Accordingly, Petitioner's claim that she remained passive during the incident and made no overt acts is incorrect. The evidence indicates that after Priddy's assault, Petitioner did in fact exit the stairwell and entered the hallway, only to be encountered by Klacking. When asked if anyone was in the stairwell, Petitioner then indicated that she did not know or did not think so, despite her knowledge that Priddy was at that time engaged in a struggle with Sheltrown. Petitioner's act of leaving the stairwell and attempting to distract Klacking from what was happening in the stairwell allowed a rationale fact-finder to find beyond a reasonable doubt that Petitioner performed an overt act done with the intent to commit the crime of escape.

To the extent that § 2254(d) deference applies to the trial court's summary denial of this claim, the adjudication did not result in an unreasonable application of the *Jackson* standard. Moreover, to extent Petitioner asserts her attorneys failed to challenge the sufficiency of the evidence, the claim fails because counsel are not

*Bradshaw v. Warren*, USDC #09-13053

required to raise meritless objections or issues. *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999).

Petitioner's first claim does not provide a basis for granting habeas relief.

C. Conviction for Uncharged Crime

Petitioner's second claim asserts that the evidence at trial may have supported a charge of conspiracy to commit escape, given the letters she sent to Priddy, but she was only charged with attempted escape. From this she infers that the jury must have convicted her of the uncharged-offense of conspiracy to commit escape that Priddy was charged with.

This claim is without merit because it is factually incorrect. As indicated above, the prosecutor presented evidence beyond the letters and phone calls to prove that Petitioner committed overt acts. She moved into the hallway while Priddy struggled with the officer, and she made statements attempting to distract court personnel away from the stairwell.

Moreover, the trial court instructed the jury as follows:

Now the defendant Love is charged with the crime of escape or attempting to escape from jail. To prove this charge the prosecutor must prove each of the following elements beyond a reasonable doubt:

First, that the defendant was in jail or place of confinement awaiting examination or transfer to or from prison after conviction; Second, that

*Bradshaw v. Warren*, USDC #09-13053

the defendant attempted to escape from jail. Attempt has two elements. First, the defendant must have taken some action towards escaping but failed to complete the escape. It is not enough to prove that the defendant made preparations for escaping. Things like planning to escape or arranging how it will be committed are just preparation. They do not qualify as an attempt. In order to qualify as an attempt the action must go beyond mere preparation to the point where the escape would have been completed if it hadn't been interrupted by outside circumstances. To qualify as an attempt, the act must clearly and directly be related to the escape and not some other goal. Jail includes any place operated by the County of Ogemaw for detaining people charged with or convicted of a crime.

Dkt. 9-6, at 574-75.

The jury was further instructed that while Priddy was charged with (1) conspiracy to commit escape and (2) assault, Petitioner was charged with (1) conspiracy to commit assault and (2) escape. Id., and 581. The jury was cautioned that each defendant was entitled to have their guilt or innocence determined individually. Id., at 582. It must be presumed that the jury was able to follow its instructions. *Washington v. Hofbauer*, 228 F.3d 689, 706 (6th Cir. 2000). Petitioner has not offered any reason why the presumption should not be applied here. Petitioner's claim that the jury must have convicted her of the un-charged offense of conspiracy to commit escape is therefore simply not supported by the record. The claim is without merit.

 D. Ineffective Assistance of Trial Counsel

14

*Bradshaw v. Warren*, USDC #09-13053

Petitioner's third through ninth claims make allegations of ineffective assistance of counsel. Some of these claims were presented to the state court during Petitioner's direct appeal, and others were raised or supported with additional exhibits in Petitioner's motion for relief from judgment. None of the claims merit relief.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court's review of counsel's performance must be "highly deferential." *Id.* at 689. Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating

*Bradshaw v. Warren*, USDC #09-13053

ineffective-assistance-of-counsel claims established by *Strickland*. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." *Id*. at 123 (internal quotation omitted).

1. Failure to Pursue Insanity Defense

Petitioner first alleges that her trial attorney failed to investigate and pursue a defense that Petitioner was legally insane at the time she committed the offenses. This claim was raised on direct review by appellate counsel, and it was renewed and supported with additional materials during Petitioner's state post-conviction review proceeding.

The supporting materials for Petitioner's claim appear as Exhibit F to Petitioner's motion for relief from judgment. They consist of records from various mental health providers, for the most part the AuSable Community Mental Health provider. Dkt. 25-1, at 21-126. The records indicate that Petitioner was born in 1958. Her father was a WW II veteran who lived on benefits as a result of a war injury. Petitioner's father abused Petitioner from a young age, and he was twice imprisoned for automobile theft and assault. Petitioner has four siblings who all suffer from

16

*Bradshaw v. Warren*, USDC #09-13053

mental health issues. Petitioner was married at age 25 and divorced 9 years later due to her mental illnesses. Petitioner obtained a GED and had enough college credits to earn a BA. As of 2005, Petitioner's mother was still alive and was providing her with support. Petitioner was not regularly employed and received social security disability benefits due to her mental illness. She started receiving treatment for her illness at the age of 15. Throughout her life, Petitioner repeatedly found herself in romantic relationships with abusive men.

The records begin in 1993, when a petition for hospitalization was filed by a police officer because Petitioner was running into the walls of her jail cell and reporting hallucinations. A doctor later found she was suffering from acute psychosis and ordered her to be hospitalized. Petitioner was in jail with a blood alcohol level of .3. Petitioner was discharged on or about September 1, 1993, and directed to AuSable Valley Community Mental Health for follow-up treatment.

On December 27, 1994, Petitioner was admitted to the Tolfree Memorial Hospital and discharged after three days with a diagnosis of acute alcohol intoxication, chronic alcoholism, and bipolar disorder. She was admitted to the hospital with a blood alcohol level of .465. Petitioner refused a transfer to the Munson Alcohol Rehab Center and signed herself out of the hospital against medical advice.

*Bradshaw v. Warren*, USDC #09-13053

Petitioner was seen again at the AuSable Community Mental Health clinic in late 1996 and early 1997. The intake records indicate that Petitioner had served a two-year sentence for nearly killing a woman in a drunk driving accident. She was diagnosed with having bipolar disorder and a personality disorder - narcissistic/histrionic.

In November of 1997, she was seen at the clinic at and prescribed Depakore and Zyprexa. The clinic recommended she attend regular counseling. A clinic report dated December 1, 1997, indicates further problems with alcohol and an assault by her father, who had previously been prosecuted for assaulting her. This clinician diagnosed Petitioner with bipolar disorder and alcohol abuse but ruled-out personality disorder.

A December 29, 1997, report from the clinic indicates that Petitioner returned to drinking and was arrested on theft charges. Petitioner was seen by the clinic again in February 1998 and May 1998 while she was still incarcerated on the theft charges. She was seen again at the clinic in October or 1998, again as a result of alcohol abuse.

On June 2, 2004, Petitioner was seen at the North Country Mental Health center on a referral from the Michigan Department of Corrections. Records show Petitioner was finishing a prison term and was seeking treatment and medication for her bipolar

*Bradshaw v. Warren*, USDC #09-13053

disorder following release. She was subsequently seen at the AuSable clinic following her release from prison. The records indicate that clinicians generally viewed her as improving but suffering from bipolar disorder.

Records from July 2005 show that Petitioner was hospitalized after a suicide attempt in June. At the time she was living with her mother. Petitioner continued to complain of bipolar symptoms and deepening bouts with depression. She indicated that she had auditory hallucinations in the past, but not recently.

AuSable records from September 2005, indicate clinicians' impression that Petitioner was continuing to do well. However, in October of 2005, Petitioner was hospitalized after she took "too many pills." Petitioner was diagnosed with adjustment disorder / depressed bereavement. Records from November 2005 indicate that her older sister died in Hurricane Katrina. Petitioner reported rapid cycling of her bipolar disorder symptoms.

On March 10, 2006, Petitioner was charged with resisting arrest after she was pulled over by a police officer in which Priddy was driving under the influence of alcohol. Petitioner was arrested when she failed to cooperate with the officer and was tasered. Records from the jail indicate that Petitioner was treated with Dapkote and Paxil from March 10 through April 17, 2006. Petitioner indicates that she had been

*Bradshaw v. Warren*, USDC #09-13053

off her medications prior to her imprisonment, so it took time for the medications to

begin to work.  The current offense occurred on March 14, 2006, when she was in

court for her preliminary examination on the resisting arrest and alcohol charges.

Petitioner's affidavit asserts that she told her trial counsel about her history and

mental illness, but he failed to conduct any further investigation about the prospects

for raising an insanity defense.

The Michigan Court of Appeals, which was not presented with the same records

presented to the state courts on post-conviction review, rejected the claim as follows:

> Bradshaw-Love first argues that trial counsel was ineffective for failing
> to pursue an insanity defense. A criminal defendant is denied the
> effective assistance of counsel when her attorney fails to investigate and
> present a meritorious insanity defense. *People v. Parker*, 133 Mich. App.
> 358, 363 (1984). Insanity is an affirmative defense requiring proof that,
> as a result of mental illness or being mentally retarded, the defendant
> lacked substantial capacity either to appreciate the nature and quality or
> the wrongfulness of his or her conduct or conform his or her conduct to
> the requirements of the law. *People v. Carpenter*, 464 Mich. 223,
> 230-231 (2001). In support of her argument, Bradshaw-Love relies
> solely on an unsigned, unsworn affidavit that indicates that she has a
> history of bipolar disorder and depression. However, the affidavit does
> not include any facts indicating that Bradshaw-Love was legally insane
> when she committed the charged offenses, and nothing in the record
> supports Bradshaw-Love's claim that she had a meritorious insanity
> defense. Therefore, Bradshaw has failed to show that defense counsel
> was ineffective for failing to pursue an insanity defense, or that remand
> to make a testimonial record is necessary.

*Priddy*, 2008 WL 2812118, at *8.

*Bradshaw v. Warren*, USDC #09-13053

The trial court, which was presented with the additional documentation, denied the claim, stating: "the Court having reviewed the motions, brief, affidavit and exhibits and having determined that the merits of this motion was previously considered and acted on by the court . . . . it is the opinion of this Court that the defendant's motion is without merit, as it raised no new issues." Dkt. 20-1, at 58-59. The state appellate courts then denied relief by issuing unexplained orders citing Michigan Court Rule 6.508(D). See *Guilmette v. Howes*, 624 F.3d 286, 289 (6th Cir. 2010). It is therefore unclear whether the state courts adjudicated Petitioner's claim on the merits as supported with the additional documents regarding Petitioner's history of mental illness.

Nevertheless, Petitioner's claim is meritless even if AEDPA does not apply and the claim is reviewed de novo. Under Michigan law, legal insanity is an affirmative defense requiring proof that, as a result of mental illness or being mentally retarded as defined in the mental health code, the defendant lacked "substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law." MICH. COMP. LAWS § 768.21a(1). Mental illness does not otherwise constitute a defense of legal insanity.

*Bradshaw v. Warren*, USDC #09-13053

Id. The defendant has the burden of proving the defense of insanity by a preponderance of the evidence. Id.

An attorney's failure to explore the possibility of an insanity defense can rise to the level of constitutionally defective counsel. See *Daoud v. Davis*, 618 F.3d 525, 532 (6th Cir. 2010). In the present case, however, nothing in the record before the Court suggests that Petitioner's mental illness interfered with her ability to form the requisite intent for her crime, disabled her from appreciating the nature and quality or the wrongfulness of his or her conduct, or prevented her from conforming her actions to the requirements of the law.

Petitioner's records undoubtedly show that she has long suffered from substance abuse and bipolar disorder, and her life story certainly paints a sympathetic picture of a victim turned defendant through forces largely out of her control. But nothing in the proffered records suggest that her illnesses affected her to the extent that she lacked substantial capacity either to appreciate the nature and quality or the wrongfulness of her conduct or to conform her conduct to the requirements of the law. As against Petitioner's proffered records, the trial record indicates that Petitioner wrote letters to Priddy exhibiting her intent to escape by means of assaulting an officer, and that she knew of the wrongfulness of her actions.

*Bradshaw v. Warren*, USDC #09-13053

One of the letters Petitioner wrote told Priddy if  helped her escape, then she knew people who "will help you with moving out T home without question." Dkt. 9-6, at 495. She gave Priddy two plans, stating, "Agenda #1, thumbs up by stairs, bad, bad, bad. (But so far I like it the best). Agenda #2, thumbs down, by lower court parking lot/surprise element. Invoke your Viking spirit and patience (that you must cultivate. We will work on it.)" Id., at 496. The act of planning the escape by way of private letter manifests knowledge by Petitioner that her conduct was wrongful.

In follow-up letters, Petitioner wrote about obtaining a disguise and stockpiling supplies while on the run "A coat and hat for me. Don't wear the unusual attire. Blend in. Stock some canned soups in the T home. I may need a beer. Remember, thumbs up is number 1, thumbs down is number 2." Id., at 497. She also told Priddy, "you have to hop on replacing my ID soon." Id., at 497.

She knew what she was doing was wrongful but did not want Priddy to commit murder, "there is no need for death," that "most important do it quick with the less noise the better." Id., at 498. She told him, "I know we can make this work. Think beyond the hill, the other side of the mountain, bluegrass freedom. . . ." Id., at 498. These statements again manifest Petitioner's knowledge of the wrongfulness of her proposed conduct.

23

*Bradshaw v. Warren*, USDC #09-13053

Another note mentioned using two cars to escape, a drop car and an escape car. Id. She wrote of escaping to Kentucky or Florida. Id., at 500. She wasn't worried about wearing the jail garb, "just have a stocking hat and a coat for me." Id. She said in another letter, "be fearless, Viking, no hesitation. Those that tremble at the trigger fall down." Id., at 501. She wrote how no one but them were aware of the plan. Id., at 502.

Just these few examples from Petitioner's communications with Priddy belie any claim that Petitioner did not appreciate the wrongfulness of her conduct or could not conform her actions to the requirements of the law. She planned her escape in secret while at same time playing the role of a compliant prisoner.

While Petitioner very likely would have been able to establish at trial that she suffered from a mental illness under state law, she has presented no evidence that she would have been able to sustain the second prong of an insanity defense – that her mental illness affected her to the extent that she lacked substantial capacity either to appreciate the nature and quality or the wrongfulness of her conduct or to conform his or her conduct to the requirements of the law. Accordingly, Petitioner's claim is without merit because she failed to present any evidence, either to the state courts, or

to this Court, that she was legally insane as defined by state law at the time of the crime. See e.g. *Sneed v. Johnson*, 600 F. 3d 607, 611 (6th Cir. 2010).

Moreover, the trial record indicates that defense counsel's strategy was to argue that the prosecutor could not prove its case. He asserted that the with respect to the escape charge, that the evidence only showed that Petitioner's conduct showed mere preparation. And with respect to the conspiracy to assault charge, defense counsel argued that the evidence did not show that Petitioner knew of Priddy's plan to use gasoline. Counsel was not ineffective for pursuing this defense as opposed to running a insanity defense poorly supported by Petitioner's proffered records. This claim does not merit relief.

## 2. Failure to Suppress Letters to Priddy

Petitioner next claims that her counsel was ineffective for failing to move to suppress her letters to Priddy on the grounds that she was mentally incapacitated at the time she wrote them. Petitioner cites no legal theory for suppression of the letters on this basis. While Petitioner cites cases dealing with whether statements by a suspect to police are suppressible under the Fifth Amendment when involuntary, she cites no authority dealing with statements made to a private individual. "A diminished mental state is only relevant to the voluntariness inquiry if it made mental or physical

coercion by the police more effective." *United States v. Salameh*, 152 F.3d 88, 117 (2d Cir.1998) (quoting *United States v. Chrisman*, 965 F.2d 1465, 1469 (7th Cir.1992). The letters and communications at issue were made to Priddy - not the police. Therefore, Petitioner's alleged mental impairment did not provide a basis for suppressing them. Counsel was not ineffective for failing to raise this meritless objection.

3. Failure to Present Mitigating Evidence at Sentencing

Petitioner next asserts that her counsel was ineffective for failing to present evidence of her mental illness as a mitigating factor at sentencing. She states defense counsel had previously used her mental illness as a means to obtain favorable plea agreements and sentences, but he failed to do so in this case.

At the time of Petitioner's sentencing, Michigan trial courts were required to sentence convicted offenders within the calculated guidelines range absent substantial and compelling reasons for an upward or downward departure. MICH. COMP. LAWS § 769.34(2) & (3). Petitioner's counsel did not perform deficiently at the sentencing hearing by failing to raise Petitioner's illness as a mitigating factor. He challenged the guideline scoring. Dkt. 9-8, at 4-5. And he presented an argument to the court asking for leniency. He noted that if the court followed the recommended range, Petitioner's

term would be two or three times longer than what Priddy received, though he was the one who actually assaulted the court employee. Id., at 9-10. He noted that it was Priddy's own decision to use gasoline in the attack, and there was no evidence that Petitioner suggested that he do that. Id.

In response, the prosecutor noted that Petitioner had mental health issues, and that she is "very narcissistic . . . and is incapable of showing any type of empathy for the crimes that she commits." Id, at 11. "I would submit that she is very manipulative and a lot of her post telephone conversations and post letters, even to her mother, were just an attempt to try to mitigate her actions, but her words and her actions speak for themselves." Id., at 12.

In her own defense, Petitioner stated:

I would like to say that at no time would I condone or conspire to throw gasoline on anyone. It is especially unfortunate that it happened to Mr. Sheltertrown. His emotional sufferings are clearly evident. It was shocking to me. My control over Mr. Priddy, my co-defendant, had been expressed in court by notes taken out of sequence during a six-week period. In the five months I knew Mr. Priddy prior to this incident, both my mother and I supplied him with money and a vehicle. He chose how to use them. In my troubled past, I have been a Federal employee, a student, a mother, and a daughter, and a thief. But if I am one of the most dangerous criminals in this area then watch the news any day this week. And some day I would like to see my grandchildren too.

Id., at 17-18.

*Bradshaw v. Warren*, USDC #09-13053

In light of the sentencing record, defense counsel focusing on Petitioner's mental health likely would have presented double-edged sword. On the one hand, it may have painted Petitioner in a more sympathetic light – as it goes without saying that absent her illnesses her life path certainly would have been less troubled. On the other hand, highlighting her lifelong troubles might only have shown that Petitioner would remain a danger to society. As the prosecutor noted, and as some of the records Petitioner herself has supplied to this Court, Petitioner has an established history as being overly self-centered and narcissistic. She was once diagnosed with having a personality disorder. The records also detail her life-long battle with substance abuse, and her failure to successfully manage that problem. It is far from clear that focusing on Petitioner's mental illnesses was a course of action any competent attorney would have followed. There were good reasons to avoid it.

On balance, and affording the deference counsel's performance must be accorded under *Strickland*, this Court cannot conclude that defense counsel's decision to stay away from Petitioner's mental health issues constituted deficient performance. The Court also concludes that there is no reasonable probability that Petitioner's sentence would have been more favorable had counsel raised the issue at sentencing. Indeed, the trial court was ultimately presented with the materials in Petitioner's

*Bradshaw v. Warren*, USDC #09-13053

motion for relief from judgment, and it nevertheless did not grant her any relief. This claim does not provide a basis for granting habeas relief.

## 4. Conflict of Interest

Petitioner next asserts that she was denied the effective assistance of counsel because her attorney had a conflict of interest due to the fact that the charged crime occurred in a courthouse in which he regularly practiced and the victim was a court employee.

It is well established that a criminal defendant's Sixth Amendment right to counsel is denied "when an attorney's actual conflict of interest adversely affects his performance." *Peters v. Chandler*, 292 Fed. Appx. 453, 456 (6th Cir. 2008) (citing *Mickens v. Taylor*, 535 U.S. 162, 166 (2002) and *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980)). Because "it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests," prejudice "is presumed when counsel is burdened by an actual conflict of interest." *Boykin v. Webb*, 541 F.3d 638, 643 (6th Cir. 2008) (quoting *Strickland*, 466 U.S. at 692). However, merely claiming that his attorney labored under a conflict of interest is insufficient to merit relief. See *Whiting v. Burt*, 395 F.3d 602, 611 (6th Cir. 2005). Petitioner must instead demonstrate that his attorney "actively represented conflicting interests and that an

*Bradshaw v. Warren*, USDC #09-13053

actual conflict of interest adversely affected his lawyer's performance." *Id*. To sustain

a claim under this theory a defendant must "point to specific instances in the record

to suggest an actual conflict or impairment of his interests and must demonstrate that

the attorney made a choice between possible alternative courses of action." *United*

*States v. Mays*, 77 F.3d 906, 908 (6th Cir. 1996) (citation omitted).

Petitioner has failed to demonstrate that her counsel had an actual conflict of

interest that affected his choices between possible courses of action. Rather, the trial

record demonstrates that defense counsel conducted a vigorous defense of Petitioner.

He forcefully asserted Petitioner's defense that Priddy essentially acted on his own.

Petitioner has failed to point to any part of the record evidencing that defense counsel

was laboring under an actual conflict of interest. This claim does not merit relief.

5. Failure to Move to Change of Venue

Petitioner finally asserts that her counsel was ineffective for failing to move for

a change of venue given the fact that the crime occurred in the same courthouse in

which she was tried.

> Bradshaw-Love lastly argues that defense counsel was ineffective for
> failing to move for a change of venue, given that the charged offenses
> took place in the same courthouse as the trial, thereby enabling the jurors
> to view the crime scene. It is improper for a jury to consider extraneous
> facts not introduced in evidence. *People v. Budzyn*, 456 Mich. 77, 88
> (1997). But nothing in the record indicates that the jurors actually viewed

30

*Bradshaw v. Warren*, USDC #09-13053

> the crime scene. Even if some jurors may have viewed the location where the crimes were committed, there is no basis for concluding that any jurors were exposed to anything that was not a matter of evidence. Therefore, Bradshaw-Love has not established that she was prejudiced and her ineffective assistance of counsel claim necessarily fails.

*Priddy*, 2008 WL 2812118, at *8.

Counsel is not ineffective for failing to move for a change of venue when such a motion would have been denied. See *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial"). Petitioner has not demonstrated how she was prejudiced by having her trial held in the same building in which the offense occurred. She does not claim that a change of venue was required because of pretrial publicity. See, e.g., *Irvin v. Dowd*, 366 U.S. 717, 722-24 (1961); *Ritchie v. Rogers*, 313 F.3d 948, 956 (6th Cir. 2002). And she has not explained how her defense of asserting that Priddy was solely responsible for the crimes was prejudiced by having the trial held in the courthouse in which he committed the assault. Petitioner has failed to demonstrate entitlement to relief.

E. Ineffective Assistance of Appellate Counsel

Petitioner finally argues that his appellate counsel was ineffective for failing to raise the claims raised on state post-conviction review or for failing to properly

31

support the claims that were raised on direct review. The Court has reviewed all these claims and determined that none merit relief. It is not ineffective assistance for appellate counsel to decide not to raise meritless claims. See *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit."). Petitioner was not denied the effective assistance of appellate counsel because the claims she alleges counsel should have raised or better supported are all without merit.

## IV. Conclusion

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. ' 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. ' 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement

*Bradshaw v. Warren*, USDC #09-13053

to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing ' 2254 Cases, Rule 11(a), 28 U.S.C. foll.' 2254.

Petitioner has demonstrated a substantial showing of the denial of a constitutional right with respect to her claim that her counsel was ineffective for failing to raise an insanity defense a trial and failing to use Petitioner's history of mental illness as a mitigating factor at sentencing. Reasonable jurists might debate whether the Court correctly denied relief with respect to this claim. Accordingly, a certificate of appealability will issue as to this claim. The Court will also grant Petitioner permission to proceed on appeal in forma pauperis. 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a).

## V

Accordingly, it is ORDERED that the petition for writ of habeas corpus is DENIED.

33

*Bradshaw v. Warren*, USDC #09-13053

It is further ORDERED that a certificate of appealability is GRANTED with

respect to Petitioner's third and fifth claims.

It is further ORDERED that Petitioner may proceed in forma pauperis on
appeal.

S/Arthur J. Tarnow

Arthur J. Tarnow
Senior United States District Judge

Dated: October 28, 2016

I hereby certify that a copy of the foregoing document was served upon
parties/counsel of record on October 28, 2016, by electronic and/or ordinary mail.

S/Catherine A. Pickles

Judicial Assistant

34